The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| ELF-MAN, LLC, | Case No.: 2:13-CV-507-RSL |
| Plaintiff, | |
| v. | PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS |
| DOES 1 – 152, | |
| Defendants. | |

Comes now Elf-Man, LLC, by and through its counsel of record, Maureen C. VanderMay and The VanderMay Law Firm PC, and responds to the Court's Order to Show Cause and Quashing Subpoenas filed on May 9, 2013. Dkt. # 10.

## STATEMENT OF RELEVANT FACTS

**A. Commencement of Case and Status of Preliminary Discovery**

On March 20, 2013, Plaintiff filed a copyright infringement action with this Court against 152 Doe Defendants alleging the infringement of its motion picture entitled *Elf-Man*.[1] On that

---

[1] The Court's order states that this action is one of fifty-one copyright infringement actions filed against approximately 2,773 Doe defendants in this district in a four month period.

| | |
|---|---|
| 1   PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS (2:13-CV-507) | The VanderMay Law Firm PC 2021 S. Jones Blvd. Las Vegas, Nevada 89146 (702) 358-9300 |

date, Plaintiff also filed its *Ex Parte* Motion to Expedite Discovery seeking permission to serve subpoenas on the Internet Service Providers ("ISPs") identified on Exhibit 1 to Plaintiff's complaint. Dkt # 2. The Court granted Plaintiff's motion by order filed on March 26, 2013. Dkt # 6.

Upon receipt of this order, Plaintiff's counsel immediately began researching the registered agents for the nine ISPs at issue so that personal service could be effected upon them and her staff began preparing the subpoenas and related documents. Counsel also communicated with several of the ISPs to confirm that the proper entity had been identified, that personal service would be effected properly and that any follow up service requested by the ISPs would be accomplished. Plaintiff's counsel's staff forwarded these subpoenas, related documents and copies of the Court's Order Granting Leave for Preliminary Discovery ("March 26th order / Dkt # 6") via overnight delivery to its process server in Olympia, Washington on April 4, 2013. Counsel's efforts to ensure that the ISPs were personally served as quickly as possible are described in the accompanying declaration of counsel at ¶¶ 3-11.

Personal service was effected on the following ISPs on April 9, 2013:

1. WaveDivision Holdings, LLC at its place of business in Kirkland, Washington;
2. Broadstripe, LLC through its registered agent, C T Corporation System;
3. Tulalip Broadband through its custodian of records at its place of business in Marysville, Washington;
4. Comcast Cable Holdings through its registered agent, C T Corporation System;
5. CenturyLink, Inc. through its registered agent, C T Corporation System;

---

Order to Show Cause and Quashing Subpoenas ("Court's OSC / Dkt. # 10") at 1. Plaintiff's counsel has filed one other action alleging copyright infringement in this district (*The Thompsons Film, LLC v. Does 1-194*, Case No. 2:13-CV-0560-RSL, filed on March 28, 2013). Plaintiff's counsel has no knowledge of or involvement with the remaining actions referenced by the Court's order.

| | | |
|---|---|---|
| 2 | PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS (2:13-CV-507) | The VanderMay Law Firm PC<br>2021 S. Jones Blvd.<br>Las Vegas, Nevada 89146<br>(702) 358-9300 |

6. Frontier Communications of America, Inc. through its registered agent, Corporation Service Company;

7. Verizon Wireless (VAW) LLC through its registered agent, C T Corporation System; and

8. Click! Network through James Kauffman, records manager for Tacoma Public Utilities, which conducts business under the name Click! Network.

ISP Nobis Technology Group, LLC informed Plaintiff's counsel that it does not maintain a registered agent in the State of Washington (despite the fact that it conducts business within the state) and indicated that it required personal service at its place of business in Phoenix, Arizona. After locating an Arizona process server, Plaintiff's counsel forwarded the subpoena and related documents for this ISP to its process server via facsimile on April 15, 2013, and service was personally effected on April 17, 2013.

The Court's OSC notes that more than six weeks have elapsed since discovery was authorized. Court's OSC / Dkt. # 10 at 2. While Plaintiff acknowledges that this is the case, it submits that at the time of receipt of the Court's OSC it had been unable to effect service on the individual Defendants and to amend its complaint to name said Defendants because of its compliance with the time frames set forth in the Court's March 26th order. That order provided as follows: 1) each ISP was to give written notice to its affected subscriber(s) "as soon as possible after service of the subpoena[;]" 2) ISPs and affected subscriber(s) were afforded thirty days "from the date of service of the subpoena on the ISP to object to the subpoena[;]" and 3) if no objection were served, the ISP was to "comply with the subpoena within ten (10) days."[2]

---

[2] This time frame for subpoena compliance was, of course, extended in the event that an objection was filed by either an ISP or an affected subscriber. In that instance, disclosure of identifying information was prohibited until further order from the Court. March 26th order / Dkt. # 6 at 2.

3   PLAINTIFF'S RESPONSE TO ORDER TO
SHOW CAUSE AND QUASHING SUBPOENAS
(2:13-CV-507)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

March 26th order / Dkt. # 6 at 1-2. As such, Plaintiff was required to set a compliance date of at least forty days from the date that service was effected.

Because service was effected on eight of the ISPs on April 9, 2013, under the terms of the March 26th order, the deadline for the filing of objections to the subpoenas was May 9, 2013 – the date of the Court's order quashing the subpoenas.[3] In order to allow for the thirty day notice period to affected subscribers and the additional ten days within which the ISPs were to respond to the subpoenas absent the filing of an objection, the compliance date stated on these eight subpoenas was May 20, 2013.[4] Until such time as the information responsive to these subpoenas was provided directly to The VanderMay Law Firm PC from the ISPs, Plaintiff could not have named the individual Defendants and have them served.

In light of the foregoing chronology and the accompanying declaration of counsel, Plaintiff submits that it has not unduly delayed the identifying and naming of the Defendants to this action. Rather, it has made every effort to ensure that the ISP subpoenas were issued and served as quickly as possible and that the terms of the Court's March 26th order were fully and strictly followed. Indeed, when an ISP inadvertently provided subscriber information prior to the expiration of the thirty day notice period set forth in the March 26th order, counsel worked cooperatively with the ISP's counsel, did not review the information, kept no record of it and
////

---

[3] Because of the need to effect personal service in Arizona, the compliance date on the Nobis Technology Group, LLC subpoena was necessarily later than the eight subpoenas served in Washington. Because that subpoena was served on April 17, 2013, the thirty day notice period had not yet run when the issued its order quashing these subpoenas.

[4] As explained in the declaration of counsel, several ISPs requested extensions time for subpoena compliance due to their processing times and the need to ensure that their subscribers were afforded due notice. In order to accommodate the needs of the ISPs, counsel agreed to short extensions for two ISPs. *See* accompanying declaration of counsel at ¶¶ 8-10.

4   PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS (2:13-CV-507)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

1 returned the mailed copy unopened to the ISP's counsel. *See* the accompanying declaration of counsel at ¶ 11.

### B. Contacts With Affected Subscribers

Prior to filing this action, Plaintiff's counsel established office procedures for fielding any inquiries from subscribers. After serving the subpoenas in the instant action, counsel has been contacted by a handful of individuals who have received notice from their ISPs of the subpoenas issued pursuant to the Court's March 26th order. The following outlines the procedures followed by counsel's office in responding to such contacts:

When a person contacts The VanderMay Law Firm PC and identifies himself or herself as a subscriber or counsel for a subscriber, our office staff asks for the following information: their name, address, telephone number, their ISP, the case number and the name of the motion picture at issue. If the caller provides this information, counsel's office forwards to them a packet of information explaining the nature of the case and Plaintiff's position on resolution.

When a person indicates that he or she (or their client when the contact is made by counsel for the subscriber) does not believe they are responsible for the download of the motion picture at issue, Plaintiff's counsel has, in every instance, offered to have the person's computer reviewed by an expert to determine if there is any activity on the computer that would indicate that the film had been downloaded. Plaintiff's counsel also suggests that the subscriber confer with others who may have access to their internet account because frequently the download was conducted by another who lives with or spends time at the subscriber's home or place of business.

Plaintiff, through its counsel, has diligently indicated to parties who claim no responsibility that Plaintiff has no interest in trying to obtain money and/or consent decrees from persons who are in fact innocent of the conduct alleged in the complaint. However, counsel has requested some reasonable proof that the information Plaintiff has developed which identifies the

5 PLAINTIFF'S RESPONSE TO ORDER TO
SHOW CAUSE AND QUASHING SUBPOENAS
(2:13-CV-507)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

IP address and the conduct occurring through that IP address is in fact mistaken or that some excusable conduct has occurred.

As of this date, no payments have been accepted in settlement of any claims asserted in this action. Plaintiff's counsel's office has had discussions with two persons who have, in theory, agreed to pay a settlement. Counsel's office has engaged in negotiations with counsel for a third person. Additionally, information packets have been sent to several other persons who have called in as a result of the notices from their ISPs.

Several persons who have called Plaintiff's counsel's office have indicated that their financial means are limited. In these instances, counsel's office has explained that it is not Plaintiff's intent to push any Defendant into bankruptcy and that Plaintiff is willing to work with persons in difficult financial circumstances to effect a settlement consistent with those circumstances. These efforts are illustrated by the material filed under seal in response to the Court's OSC / Dkt. # 10. *See* Exhibit 3 to the accompanying declaration of counsel.

The Court's OSC references "the possibility that the judicial authority of the United States may be used to wrest improvident settlements from pro se litigants under threat of huge statutory penalties." Court's OSC / Dkt. # 10 at 2. Plaintiff commenced this action not to wrest improvident settlements but to seek redress for the piracy of its copyrighted work. As explained in detail in Plaintiff's complaint, piracy via peer-to-peer networks such as BitTorent is a widespread problem that is having a significant adverse impact on the entertainment industry and, particularly, on Plaintiff. Plaintiff has filed this action in an effect to stop the theft of its copyrighted material and for no other purpose. *See* accompanying declaration of counsel at ¶ 14.

## SUBSTANTIVE RESPONSES

1. Plaintiff's counsel was served electronically with the Court's OSC on Friday, May 10, 2013, at 11:56 a.m. On that date, counsel was out of the office and she did not review this order until approximately midday on Monday, May 13, 2013. Upon reviewing this order, counsel

6   PLAINTIFF'S RESPONSE TO ORDER TO
    SHOW CAUSE AND QUASHING SUBPOENAS
    (2:13-CV-507)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

began notifying the nine above-referenced ISPs of the fact that they need not respond to the subpoenas previously served upon them. All nine ISPs previously served with subpoenas have been afforded this notice.

2. All requested documentation is being filed contemporaneously under seal as required by the Court's order. *See* accompanying declaration of counsel at ¶ 21 and Exhibit 3. Since reviewing the Court's OSC, Plaintiff's counsel staff have been directed to simply take a message from any callers regarding this action who identify themselves as subscribers or counsel for subscribers. Pursuant to the Court's directive, counsel has not returned any of these calls, nor have any additional correspondence (including emails), information packets or settlement documents been set out since the Court's OSC was seen by Plaintiff's counsel.

3. For the reasons set forth *infra* in the Legal Argument section of this response, Plaintiff respectfully requests the Court conclude that joinder of the 152 Doe Defendants was proper and that it allow this action to proceed as filed by Plaintiff, subject to any subsequent Court order and/or the request of any Defendant to be severed due to a claim of prejudice and named in a separate action.

4. Plaintiff respectfully requests that the Court lift the stay of this proceeding imposed in its OSC and that it reinstate the ISP subpoenas quashed in said order.

## LEGAL ARGUMENT

**Joinder of Plaintiff's Claims Against the Doe Defendants Is Proper Under F.R.C.P. 20(a)(2) and the Claims Should Not Be Severed**

Plaintiff's complaint joins the 152 Doe Defendants pursuant to the permissive joinder rule set forth in F.R.C.P. 20(a)(2). This provision provides in pertinent part as follows:

"Persons . . . may be joined in one action as defendants if:

"(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

7  PLAINTIFF'S RESPONSE TO ORDER TO
SHOW CAUSE AND QUASHING SUBPOENAS
(2:13-CV-507)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

"(B) any question of law or fact common to all defendants will arise in the action."

Under well-established decisional law, this rule has been broadly construed in favor of joinder. *See, e.g., United Mine Workers v. Gibbs,* 383 US 715, 724 (1966) (noting with respect to the Federal Rules of Civil Procedure that "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."); *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 558 F.2d 914, 917 (9th Cir. 1977) ("We start with the premise that Rule 20, Fed. Rules Civ. Proc., regarding permissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits"). *See also* 4 James William Moore, *Moore's Federal Practice* (3d ed. 2013) § 20.02[1][a] ("Consistent with other federal joinder provisions, the permissive party joinder rule emphasizes pragmatism; joinder is not based on arcane historic formulations of legal relationships, but on common sense, fact-based considerations.").

The present controversy easily meets Rule 20(a)(2)'s two pronged requirement for permissive joinder. First, Plaintiff's complaint alleges that all of the Doe Defendants participated in the unlawful downloading of its motion picture *Elf-Man* in either the same transaction or occurrence or through a series of related transactions or occurrences. The pertinent allegations read as follows:

¶ 23 – "The Defendants are a group of BitTorrent users or peers *whose computers are collectively interconnected and used* for illegally copying and distributing Plaintiff's motion picture." (Emphasis added).

¶ 24 – "The Defendants and each of them have illegally and without authorization from Plaintiff *copied, downloaded, shared and uploaded* Plaintiff's motion picture using the BitTorrent system." (Emphasis added.)

8 PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS (2:13-CV-507)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

In its explanation of how BitTorrent works to download content, Plaintiff's Complaint, Dkt. # 1, at ¶¶42-59, Plaintiff makes the following additional allegations regarding the relationship among these Defendants:

¶ 55 – " The effect of this distributed network of users all downloading and uploading the same file creates what is commonly known as a 'swarm' wherein users operate collectively to copy and distribute media and content."

¶ 56 – "Members of the swarm become interconnected to download files, wherein the download creates an exact digital copy on the downloaders' computers. As additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives pieces of the file from each other infringer in the swarm who has already downloaded any part of the file."

¶ 57 – "This distributed nature of BitTorrent leads to a rapid viral sharing of media and content throughout the collective peer users. As more peers join the collective swarm, the frequency and speed of successful downloads also increases."

In describing Defendants' conduct, Plaintiff's complaint alleges further as follows:

¶ 65 – "By participating in a swarm, each Defendant participated in the exact same or nearly identical transaction, occurrence, or series of transactions or occurrences as the other Defendants."

¶ 66 – "Upon information and belief, many Defendants also acted in concert with others, including other Defendants by participating in a Peer Exchange."

¶ 67 – "Upon information and belief, many Defendants also acted in concert with other Defendants and swarm members and by linking together globally through use of a Distributed Hash Table."

¶ 68 – "Each defendant's conduct is effectively a collective enterprise constituting substantially similar or identical facts."

9   PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS (2:13-CV-507)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

With respect to the issue of joinder, Plaintiff's complaint alleges as follows:

¶ 31 – "Plaintiff acknowledges that joinder in this action under F.R.C.P. 20(a)(2) is permissive in that Plaintiff's claims arise out of the same occurrences or transactions, or series of occurrences or transactions and that there are questions of law and fact common to each of the Defendants."

¶ 32 – "All of the Defendants have collectively acted through BitTorrent to illegally download and distribute Plaintiff's motion picture, each damaging Plaintiff."

¶ 33 – "As such, Plaintiff's rights to relief, as stated below, ultimately arise out of the same series of transactions and occurrences."

¶ 34 – "This action also raises substantial questions of law and fact common to all Defendants."

¶ 35 – "Permissive joinder in the instant case is to permit a more efficient management of Plaintiff's claims against the several Defendants and to reduce the costs to Plaintiff and Defendants and to reduce the costs and burdens on the Court."

¶ 36 – "Notice is provided, that on being specifically identified and on request from an identified Defendant, Plaintiff agrees to sever any Defendant that claims prejudice in being joined in this matter and to proceed against each such Defendant individually."

These allegations, taken together, demonstrate that Plaintiff has not merely alleged that all Defendants unlawfully downloaded its motion picture. Rather, it has alleged that the use of BitTorrent to download *Elf-Man* was necessarily a collective enterprise in which Defendants participated in order to engage in this infringing activity.

The Court's OSC calls the complaint's allegation that the Doe Defendants participated in a "single swarm" into question because the infringing downloads are alleged to have occurred over a three month period. Court's OSC /Dkt. # 10 at 1-2. With all due respect, Plaintiff submits that because a swarm's activity need not and typically does not occur simultaneously,

this time span does not refute Plaintiff's assertion that these Defendants acted as a single swarm in their downloading of *Elf-Man*. What ties the Defendants into a single swarm is their use of a a single so-called "hash" in downloading Plaintiff's motion picture. Plaintiff's complaint describes these hash identifiers as follows:

> "The torrent file contains a unique hash identifier which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency. This torrent file is tagged with the file's unique "hash," which acts as a "roadmap" to the IP addresses of other users who are sharing the media or content identified by the unique hash, as well as specifics about the media or content file."

Complaint / Dkt. # 1 at ¶ 49.

Exhibit 1 to the complaint indicates that all 152 Defendants employed a single hash identifier, namely SHA1: 33E6C4D563C276F29A7A48502C6640191DE3DD72, in their downloading of *Elf-Man*. As the complaint's discussion of an exemplar Defendant explains, Plaintiff alleges that each Doe obtained a Torrent file identified by this hash and then used his or her BitTorrent program to initiate connections with hundreds of other users possessing and uploading or sharing copies of its copyrighted work. Dkt. # 1 at ¶¶ 69-71. Nothing about this collective process requires that the uploading/downloading activity be done simultaneously or even close in time. The United States District Court of the Southern District of New York addressed this issue in *Malibu Media, LLC v. Does 1-5*, No. 2:12-cv-2954 (NRB) at 9-10 (S.D.N.Y. August 24, 2012) (memorandum and order allowing joinder), and concluded that the Defendant's BitTorrent activity over a period of months was a part of the same "series of transactions or occurrences." The Court stated as follows:

> "The length of time over which defendants are alleged to have participated in the swarm - eighty-eight days - does not undermine the interrelated nature of their actions. '[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap . . . .' Patrick Collins, 2012 WL 1190840, at *8. As described above, the BitTorrent protocol operates such that every user is logically related to every other user who participates in the same swarm, regardless of their time of participation. *See id.; see also First Time Videos, LLC v. Does 1-95*, No. 11 Civ. 3822 (MEJ), 2011 WL 4724882, at *6 (N.D. Cal. Oct. 7, 2011) (noting that 'even after a Doe Defendant disconnects from the swarm, the

11  PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS (2:13-CV-507)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

parts of the file that he downloaded and uploaded will continue to be transferred to other Doe Defendants remaining in the swarm').

"While the period at issue may therefore appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time. *Cf. Ginett v. Computer Task Grp., Inc.*, 962 F.2d 1085, 1094 (2d Cir. 1992) (noting that '[w]ith the advent of industrialization, high-speed transportation, and urbanization, more intricate disputes appeared with greater frequency, requiring greater use of the more liberal joinder procedures' (internal quotation marks omitted). Here, the nature of the technology compels the conclusion that defendants' alleged transactions were part of the same 'series of transactions or occurrences.' *See Digital Sin 176*, 2012 WL 263491, at *5. Accordingly, we find that the Rule 20(a)(2) criteria for joinder are satisfied."

With respect to Rule 20(a)(2)'s second requirement, i.e. that "any question of law or fact common to all defendants will arise in this action[,]" Plaintiff's complaint alleges that all 152 Doe Defendants used the same technology to download its copyrighted motion picture. As such, the governing law will be largely identical with respect to all claims, as will many of the facts concerning how this work was downloaded by Defendants. While some Defendants at a later stage in this proceeding may raise defenses that turn on specific factual circumstances, the existence of some individual factual issues does not defeat joinder. Rule 20(a)(2) requires only *one or more* common factual or legal issues – not complete identity of issues. *See* 7 Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 1653 ("The second requisite that must be satisfied to sustain permissive joinder of parties is that a question of law or fact common to all the parties will arise in the action. Rule 20(a) does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be at least one common question of law or fact.").[5]

////

---

[5] The Wright, Miller & Kane treatise discusses the text of F.R.C.P. 20(a) prior to its 2007 amendment. However, these amendments were stylistic only and the operative language was not altered from the predecessor version of the rule. *See* Committee Notes on Rules – 2007 Amendment.

| | |
|---|---|
| 12   PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS (2:13-CV-507) | The VanderMay Law Firm PC 2021 S. Jones Blvd. Las Vegas, Nevada 89146 (702) 358-9300 |

Plaintiff's complaint acknowledges that joinder in this case is permissive rather than mandatory and it expressly agrees to sever any named Defendant who claims prejudice as a result of being joined in this action and to proceed individually against each such Defendant. *See* Complaint, Dkt. # 1 at ¶¶ 31, 36. In Plaintiff's view, the permissive joinder of its claims coupled with this agreement to sever based solely upon an allegation of prejudice by any named Defendant will promote the efficient processing of these claims while protecting the interest of any Defendant who objects to joinder. This efficiency is demonstrated by the manner in which this case has been processed to date. Had Plaintiff opted to file 152 separate actions against these Defendants, the Court would have received 152 complaints and related documents for initial processing, along with 152 separate motions to expedite discovery so that the information necessary to identify each Doe Defendant could be obtained from his or her ISP. Of course, the content of these motions and the legal issues raised therein would be substantially identical. Such a proliferation of substantially identical claims would be directly contrary to the primary purpose of F.R.C.P. 20, which is to promote judicial efficiency and avoid the unnecessary multiplication of suits. *See 7 Federal Practice and Procedure, supra,* at § 1652 ("The purpose of [F.R.C.P. 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." (Footnotes omitted)). In declining to sever claims based upon docket management considerations, one district recently stated as follows: "Trading the uncertainty of *possible* problems from multiple defenses for the certainty of multiple lawsuits does not make practical sense, at this point, and seems contrary to the potential economies Rule 20 hopes to achieve." Report and Recommendation Re: Motions to Sever Defendants, Dkt No.

/ / / /

/ / / /

/ / / /

/ / / /

| | | |
|---|---|---|
| 13 | PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS (2:13-CV-507) | The VanderMay Law Firm PC<br>2021 S. Jones Blvd.<br>Las Vegas, Nevada 89146<br>(702) 358-9300 |

6, at 15, *Malibu Media, LLC v. Does 1-30,* No. 2:12-cv-13312-DPH-MJH ( E.D. Mich. May 16, 2013).[6]

At the very least, it would be premature to sever the claims against the Doe Defendants at this early stage of the litigation. F.R.C.P. 20(b), along with F.R.C.P. 21, provides the Court with flexible tools for the efficient management of this action as it progresses, either through ordering separate trials or severing the claims made against certain parties if circumstances so warrant once this action has progressed. *See* 7 *Federal Practice and Procedure, supra,* at § 1653 (noting that an expansive reading of F.R.C.P. 20(a) "seems sound inasmuch as no difficulty is likely to result from the joinder of even marginally related parties at the pleading stage. The court always has discretion under Rule 20(b) to sever those parties whose claims may be tried more conveniently in separate actions or whose continued presence might be prejudicial to other litigants." (footnotes omitted)).

In a substantially similar copyright infringement action asserted against over 2,000 Doe defendants based upon the downloading of motion pictures using BitTorrent technology, the U.S. District Court for the District of Columbia denied motions to dismiss based upon improper joinder. *Maverick Entertainment Group, Inc. v. Does 1-2,115,* 810 F. Supp. 2d 1 (D.D.C. 2011). In reaching this conclusion, the Court noted the "same transaction, occurrence or series of transactions or occurrences" language of Rule 20(a)(2) requires that the joined claims be "logically related." *Id.* at 12. The Court concluded that the plaintiff's allegations regarding file sharing through BitTorrent rendered the claims "logically related." *Id.* The Court also found that the plaintiff had met the requirement of at least one common legal or factual issue. It noted that

---

[6] Because it contains a detailed description of how BitTorrent works and also discusses the decisions of various courts regarding the joinder of claims against BitTorrent participants, a true and correct copy of this Report and Recommendation is attached hereto as Attachment 1.

14  PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS (2:13-CV-507)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

the plaintiff would need to establish ownership of the copyright and the conduct amounting to infringement against all Defendants. Further, the evidence regarding how BitTorrent works and how Plaintiff investigated the conduct at issue would be common to all claims. *Id.* at 14. *See also Liberty Media Holdings, LLC v. Swarm Sharing Hash File AE340D056012 9AFEE8D78CE 07F2394C7 B5BC9C05,* 821 F. Supp. 2d 444, 451-52 (D. Mass. 2011) (concluding that joinder of claims against a swarm of BitTorrent downloaders was proper); *Malibu Media, LLC v. Does 1-5,* No. 2:12-cv-2954 (NRB) (S.D.N.Y. August 24, 2012) (same).[7]

The Court's OSC expresses concerns regarding the impact of copyright infringement actions of this sort on its docket, Court's OSC / Dkt. # 10 at 3, and Plaintiff is cognizant of these concerns. However, Plaintiff respectfully requests that the Court also consider the limited options it and other copyright owners have in seeking redress for the losses they are sustaining as a result of piracy through peer-to-peer file sharing through BitTorrent. With respect to this issue, the Court in *Donkeyball Movie, LLC v. Does 1-171,* 810 F. Supp. 2d 20 (D.D.C. 2011), noted as follows:

> "This Court similarly must evaluate judicial economy and the administrative burdens of managing such cases, set against the challenge this broad-scale allegedly infringing activity represents for the copyright owners. Copyright owners' efforts to protect their copyrighted works through Doe actions are 'costly[,] time consuming[,] ... cumbersome and expensive.' *In re Charter*

---

[7] As the Court is undoubtedly aware, various U.S. District Courts have considered the issue of joinder of claims stemming from BitTorrent downloading and have reached differing conclusions on this issue. *See Malibu Media, LLC v. Does 1-15*, Case No. 2:12-2077 (E.D. Pa. July 30, 2012) (memorandum opinion denying motions to sever and to quash subpoena and summarizing decisions respectively allowing and disallowing joinder). Plaintiff submits that the decisions allowing joinder are both more persuasive and more consistent with the purpose of Rule 20(a)'s expansive approach to joinder, particularly at this early stage of the litigation. For a detailed discussion of how BitTorrent downloading works and why joinder is appropriate for claims against those using BitTorrent to download a given motion picture, see Report and Recommendation Re: Motions to Sever Defendants, Dkt No. 61 in *Malibu Media, LLC v. Does 1-30,* No. 2:12-cv-13312-DPH-MJH) (E.D. Mich. May 16, 2013), attached hereto as Attachment 1.

15    PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS (2:13-CV-507)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

*Commc'ns, Inc., Subpoena Enforcement Matter,* 393 F.3d 771, 782 (8th Cir.2005) (Murphy, J., dissenting). Yet, copyright owners have limited alternatives to obtain redress for infringement of their protected works other than such lawsuits. *See Arista Records LLC v. Does 1–27,* 584 F. Supp. 2d 240, 252 (D.Me.2008) ('the Court begins with the premise that the Plaintiffs have a statutorily protected interest in their copyrighted material and that the Doe Defendants, at least by allegation, have deliberately infringed that interest without consent or payment. Under the law, the Plaintiffs are entitled to protect their copyrighted material and it is difficult to discern how else in this unique circumstance the Plaintiffs could act. Not to act would be to allow those who would take what is not theirs to remain hidden behind their ISPs and to diminish and even destroy the intrinsic value of the Plaintiffs' legal interests.'); *In re Charter Commc'ns,* 393 F.3d at 775 n. 3 ('[A]s a practical matter, copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity.'). Courts must nonetheless maintain supervision of these lawsuits and, at some point, the sheer number of putative defendants involved in a single case may necessitate severance."

810 F. Supp. 2d at 30-31.

Plaintiff submits that allowing this action to proceed against 152 Doe Defendants at this preliminary stage furthers both the Court's interest in managing its docket and Plaintiff's interest in seeking redress for the infringement of its copyrighted work.

Lastly, the Court's OSC expresses concern at the possibility that "the judicial authority of the United States may be used to wrest improvident settlements from pro se litigants under threat of huge statutory penalties." Court's OSC / Dkt. # 10 at 2.  While Plaintiff is cognizant of the bases for the Court's concern and addresses this issue in the accompanying declaration of counsel, it submits that nothing in its conduct nor in that of its counsel indicates that Plaintiff has any such intent and, therefore, its claims should not be severed due to the superficial similarity between its claims and those of others. *See* Memorandum and Order, *Malibu Media, LLC v. Does 1-5,* No. 2:12-cv-2954 (NRB) at 12, (S.D.N.Y. August 24, 2012) (declining to exercise discretion to sever claims due to reluctance "to prevent plaintiff from proceeding with its case based only on a 'guilt-by-association' rationale").

////

////

16  PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE AND QUASHING SUBPOENAS (2:13-CV-507)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court allow this action to proceed against all Doe Defendants, that it lift the stay of this proceeding and that it re-instate the quashed subpoenas to the ISPs listed on Exhibit 1 to the complaint.

DATED: May 22, 2013

                                                     Respectfully submitted,

                                                   The VanderMay Law Firm PC

/s/ Maureen C. VanderMay
Maureen C. VanderMay, WSBA No. 16742
email: elfmanwa@vandermaylawfirm.com
The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 538-9300
Of Attorneys for Plaintiff

17   PLAINTIFF'S RESPONSE TO ORDER TO
     SHOW CAUSE AND QUASHING SUBPOENAS
     (2:13-CV-507)

The VanderMay Law Firm PC
2021 S. Jones Blvd.
Las Vegas, Nevada 89146
(702) 358-9300