UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELF-MAN, LLC,

    Plaintiff,

    v.

DOES 1 - 152,

    Defendants.

Case No. C13-0507RSL

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE

This action was filed on March 20, 2013. Each of the Doe defendants is identified only by an IP address linked to the on-line sharing of the movie "Elf-Man." Plaintiff asserts direct, contributory, and indirect copyright infringement claims against each Doe defendant. The Court granted plaintiff's motion to initiate early discovery from internet service providers in order to obtain information sufficient to identify the owner of each IP address.

On May 9, 2013, the Court issued an order to show cause acknowledging concerns regarding the propriety of joinder and the possibility that plaintiff was using the judicial authority of the United States to wrest improvident settlements from *pro se* litigants under threat of huge statutory penalties. The Court stayed the above-captioned matter and required plaintiff to provide copies of all written communications with the owners of the IP addresses and summaries of all oral communications with those

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 1

individuals.  In addition, the Court ordered plaintiff to show cause why the case should not be dismissed for improper joinder and/or pursuant to the Court's inherent authority to control its docket.  Having reviewed plaintiff's response, the Court finds as follows:

**A. Joinder**

Federal Rule of Civil Procedure 20(a)(2) imposes two specific requirements for the permissive joinder of defendants.  First, the right to relief against defendants must arise out of "the same transaction, occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(2)(A).  Second, there must be some question of law or fact common to all defendants.  Fed. R. Civ. P. 20(a)(2)(B).  Taking the well-pled factual allegations of the complaint as true and considering the declarations of plaintiff's investigator, the Court finds that these requirements are easily met.  Plaintiff's investigator found that a user of the IP addresses identified in this action possessed a pirated copy of "Elf-Man," that each copy was a reproduction of the same original, and that plaintiff's investigator downloaded a portion of the pirated copy from each defendant.  The Court finds that defendants' knowing participation in an on-line media distribution swarm, the purpose of which is to distribute copies of a single original and which actually resulted in such distribution, is a series of transactions or occurrences that justifies joinder under Rule 20(a)(2)(A).

The Court further finds that litigating this case will involve common questions of fact and/or law regarding the existence of a swarm, the alleged downloads, plaintiff's ownership of the copyright, and the elements of infringement.  The fact that persons associated with the IP addresses may have individual defenses to plaintiff's claims does not change the fact that there will be some common questions of law or fact: not all of the legal and factual issues must be identical as to all defendants.  Patrick Collins, Inc. v. Does 1-21, 282 F.R.D. 161, 168 (E.D. Mich. 2012).

Although the specific requirements of Rule 20 are met, the Court must also

determine whether permissive joinder will "comport with the principles of fundamental fairness." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000). Factors relevant to this determination include the possible prejudice to any party, delay caused by joinder, the motives for joinder, the closeness of the relationship between the joined parties, notice to the parties, and the effect of joinder on jurisdictional issues. Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980). In the Ninth Circuit, "[w]e start with the premise that Rule 20 . . . is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 916-17 (9th Cir. 1977).

Jointly litigating the facts related to the swarm plaintiff has identified and the legal issues related to infringement is more efficient for plaintiff and the Court than litigating 152 suits involving only one IP address each. In addition, the nature of the swarm and the BitTorrent protocol, with its many pieces and multiple sources, suggests that joint litigation may be necessary for plaintiff to substantiate its theory that defendants acted in concert to download copyrighted material, even if the segment downloaded from a particular defendant, considered alone, might not constitute copyright infringement. Defendants, on the other hand, gain no appreciable advantage through individual litigation: in either case, defendants will be able to offer individual defenses to the allegations. Nor does there appear to be any significant risk of liability by association.[1] Jointly litigating these claims also allows defendants, many of whom will undoubtedly proceed *pro se*, to pool resources, rely on arguments raised by other defendants, and/or benefit from the participation of retained counsel. The only potential advantage to

---

[1] Contra Voltage Pictures, LLC v. Does 1-12, No. 2:13-292-AA, 2013 WL 1900597 (D. Or. May 4, 2013) (finding availability of statutory damages and potential that unintentional infringers could be prejudiced by being sued along with original seeder and/or serial infringers precludes joinder).

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 3

1  severance appears to be the hope that plaintiff will give up its claims, no matter how
2  meritorious, in the face of mounting costs.  If, as the Court is willing to assume at this
3  stage in the proceeding, plaintiff's allegations are true and its copyright has been
4  infringed, such a result is neither just nor fair.
5          The Court further finds that there is no indication that joinder will impact
6  the Court's subject matter jurisdiction and that defendants' alleged participation in a
7  knowing and intentional file-sharing scheme constitutes interrelated acts justifying joint
8  litigation even if defendants remained unaware of the identity of their fellow BitTorrent
9  users.
10         The Court is, however, concerned about the impact that joinder has had on
11 the handling of similar litigation pending in this district and how that handling reflects on
12 plaintiff's motives for amassing the group of defendants in this case.  To be clear, the
13 Court finds that joinder under Rule 20 for purposes of prosecuting copyright infringement
14 claims against members of a swarm in a single lawsuit can be appropriate.  If, upon
15 receipt of identifying information regarding the individuals associated with the IP
16 addresses at issue, plaintiff timely affects service and actually prosecutes this case, the
17 goals of efficiency, justice, and expeditious resolution of the dispute will be served.  If,
18 however, service is not affected and the pendency of this action is simply used as a
19 cudgel, mass joinder will cause delay and raise all sorts of potential for abuse, as
20 discussed more fully below.
21         In the circumstances of this litigation, the Court finds that joint litigation
22 against numerous participants in a single swarm satisfies the specific requirements of
23 Rule 20(a)(2) but that the joinder may ultimately create a procedural imbalance which,
24 left unchecked, would not comport with the principles of fundamental fairness.
25
26

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 4

**B. Lack of Service**

Pursuant to Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The time for service has now passed, but plaintiff had more than two months left on the service clock when the above-captioned matter was stayed. There is reason to doubt whether timely service would have been affected in the absence of the stay, however. Even when plaintiff learned the identity of persons associated with the IP addresses at issue in this case, it delayed service in favor of pursuing discovery and settlement negotiations.[2]

As subscribers became aware of the lawsuit, they predictably began contacting plaintiff's counsel in order to obtain information. Counsel apparently collected identifying information and sent a demand letter, a sheet of "Frequently Asked Questions," a copy of the complaint, and a waiver of service of summons form. Plaintiff has not provided a copy of its Release & Settlement Agreement – presumably because negotiations did not proceed to that point before the stay was entered – but the information available to the Court raises concerns regarding overreaching and procedural unfairness.

---

[2] The packet sent to individuals who contacted counsel included a demand letter, a copy of the complaint, and two copies of the waiver of service of summons form. There is, however, no indication that plaintiff included a prepaid means of returning the form as required by Fed. R. Civ. P. 4(d)(1)(C). Nor were any proofs of actual service filed as required by Fed. R. Civ. P. 4(l).

Plaintiff apparently served individuals after the stay took effect on the theory that it was obligated to do so under the Federal Rules of Civil Procedure. This explanation for unauthorized contact is not persuasive given that the Court had stayed the litigation, including all pending deadlines, and had expressly forbade further communications with the putative defendants. Any confusion on plaintiff's part regarding the interplay between the Court's order and the Federal Rules could have been resolved with an inquiry. While plaintiff's handling of this litigation has been generally commendable, the decision to serve individuals who were barred from filing an answer and could no longer obtain clarifying information from counsel was inexplicable. It is not surprising that counsel received "an aggressive telephone message from a pro se party." Supp. Decl. of Counsel (Dkt. # 29) at 2-3.

1    Plaintiff's demand letter and FAQ sheet paint a dire portrait of the
2 recipient's situation.  Plaintiff emphasizes the risk of huge damage awards (nine mentions
3 of statutory penalties and/or judgments of $150,000 or more)[3] and the possibility of an
4 attorney's fee award (at least eight references, including a warning that fees "can be
5 thousands; tens of thousands if the matter proceeds to trial").  Plaintiff also warns that
6 additional claims for spoliation could be filed against the recipient, that being named in
7 the lawsuit increases the risk that other copyright holders will take an interest in the
8 recipient's activities, and even that failure to settle could ultimately result in the loss of
9 the recipient's house if he or she is unable to pay the judgment amount.  Plaintiff demands
10 a sizeable settlement amount, which is available for only two weeks before it jumps even
11 higher.  Plaintiff's advice regarding the association of counsel (the court will not appoint
12 counsel in a civil suit), the validity of possible defenses (failure to password protect
13 and/or monitor the use of your internet connection generates liability), and the bankruptcy
14 code (this type of debt would likely be nondischargeable) is suspect.  Finally, plaintiff
15 invites the recipient to provide access to his or her computer or other evidence proving
16 that he or she did not download "Elf-Man."
17    When plaintiff sought permission to conduct discovery in this case, it
18 represented the discovery as both limited and efficacious:  by subpoenaing subscriber
19 identification information from the ISPs, plaintiff would be able to pursue this lawsuit and
20 protect its copyrights.  It turns out, however, that identifying the account holder tells us
21 very little about who actually downloaded "Elf-Man" using that IP address.  As one court
22 noted, "it is no more likely that the subscriber to an IP address carried out a particular

---

[3] The $1,500,000 damage award touted in the FAQs was a default judgment entered when defendant failed to appear.  Contrary to plaintiff's supposition, there is no indication that the court considered the viral nature of the BitTorrent protocol when it granted plaintiff's unopposed demand for statutory damages.

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 6

computer function . . . than to say an individual who pays the telephone bill made a specific telephone call." In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012). In fact, it is less likely. Home wireless networks are ubiquitous, meaning that a single IP address can simultaneously support multiple computer devices throughout the home and, if not secured, additional devices operated by neighbors or passersby. Thus, the risk of false positives is very real. Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 243 (S.D.N.Y. 2012). It is not clear that plaintiff could, consistent with its obligations under Fed. R. Civ. P. 11, make factual contentions regarding an internet subscriber's infringing activities based solely on the fact that he or she pays the internet bill. Plaintiff seems to be aware of this problem and has refrained from identifying the Doe defendants more specifically even after it learns the name of the subscriber. Plaintiff does not, however, take the appropriate step of returning to the Court to seek permission to conduct additional discovery. Rather, plaintiff demands that the subscriber prove he or she did not download "Elf-Man." Therein lies the rub. Plaintiff has effectively obtained access to unrepresented individuals and parleyed that access into open-ended and unlimited discovery, despite the very narrow discovery order entered by the Court.

In this context, the 120-day service deadline is the only thing that limits plaintiff's unsanctioned discovery expedition. If plaintiff feels it has enough information to satisfy its Rule 11 requirements by simply identifying the subscriber associated with an IP address, it should serve the complaint and initiate litigation subject to the limitations imposed by the rules of civil procedure. If, on the other hand, plaintiff would have trouble justifying a factual contention that the internet subscriber must, by virtue of that fact, be the downloader, it could seek an extension of the service deadline, explaining why it was unable to obtain the information in a timely manner and identifying steps to be

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 7

taken that would allow litigation to begin. If those steps include additional discovery, further permission of the Court would be necessary.

In short, plaintiff must actually prosecute the claims it has asserted. Instead, plaintiff's litigation strategy seems to be to use the pendency of this action to create a period of time in which it can scare subscribers into settlement as the only means of avoiding both litigation costs and harsh statutory penalties. The communications disclosed to the Court show that plaintiff makes every effort to educate subscribers regarding the statutory penalties he or she faces. Coupled with the clear implication that evidence of IP address ownership is legally sufficient to establish copyright infringement and the demand that the subscriber prove his or her innocence, it is not surprising that subscribers – whether guilty or not – may choose to settle. While the risk of improvident settlements and overreaching cannot be eradicated, the Court will enforce not only the procedural rules that favor plaintiff, but also those that protect defendants. Absent extraordinary and unforeseeable circumstances, the service deadline in this case will be strictly enforced in order to reduce the risk of overreaching.

For all of the foregoing reasons, the stay of the above-captioned case is hereby lifted and plaintiff may again pursue identifying information regarding the Doe defendants from the ISPs pursuant to the Court's prior discovery order. Plaintiff shall have seventy days from the date of this Order to complete discovery and affect service. Failure to file proof of service on or before the seventieth day will result in the dismissal of plaintiff's claims as to each unserved defendant. The Court takes under advisement issues regarding plaintiff's service of unidentified defendants after this action was stayed.

Dated this 7th day of August, 2013.

/s/ Robert S. Lasnik
Robert S. Lasnik
United States District Judge

ORDER LIFTING STAY AND
EXTENDING SERVICE DEADLINE - 9